UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Osbert Huberto Bonilla Padilla, | Case No. 2:26-cv-01384-CDS-DJA |
| Petitioner | **Order Denying the Petitioner's Writ of Habeas Corpus and Denying the Respondents' Motion to Dismiss** |
| v. | |
| Todd Blanche, et al., | [ECF Nos. 6, 9] |
| Respondents | |

Petitioner Osbert Huberto Bonilla Padilla initiated this action on May 4, 2026, by filing a petition for writ of habeas corpus. *See* Pet., ECF No. 1-1. Bonilla Padilla then filed a first amended petition (FAP) on May 28, 2026. FAP, ECF No. 6. Therein, Bonilla Padilla petitions for a writ requiring the respondents to provide him with a new bond hearing within seven days before an Immigration Judge (IJ), at which the respondents must bear the burden of proving by clear and convincing evidence that the petitioner presents a flight risk or a danger to the community. *Id.* at 12. Respondent John Mattos filed a response to the amended petition. Resp., ECF No. 8. On June 11, 2026, the federal respondents filed a motion to dismiss. Mot., ECF No. 9. The petitioner opposes the motion to dismiss. *See* Opp'n, ECF No. 10.[1] For the reasons explained herein, I deny Bonilla Padilla's petition and deny the federal respondents' motion to dismiss.

I.      **Background**

Bonilla Padilla is a citizen of El Salvador who has lived in Nevada for about twenty-six years. ECF No. 6 at 3–4. Bonilla Padilla held temporary protected status (TPS) from approximately 2001 until 2019. *Id.* at 4. In 2016, the petitioner was convicted of reckless driving, and in 2017, he was convicted of driving under the influence. *Id.* In 2020, he was convicted of battery, and three years later, he was convicted of driving under the influence. *Id.*

---

[1] Replies were due June 24, 2026. The respondents did not file a reply, so the motion is fully briefed.

On March 14, 2026, Bonilla Padilla was arrested in Las Vegas on a new DUI charge. *Id.* After being arrested, he was transferred to ICE custody and has since remained in immigration detention. *Id.* On May 14, 2026, his arraignment on the DUI charge was vacated. *Id.*; Pet'r's Ex. 1, ECF No. 6-1 at 2.

At some point, Bonilla Padilla requested a custody redetermination hearing before the immigration court. ECF No. 6 at 4. On April 22, 2026, the IJ conducted a bond hearing. *Id.* at 4–5. As alleged in the FAP, during the custody redetermination hearing, the IJ questioned Bonilla Padilla about the conduct underlying the then-pending March 2026 DUI charge. *Id.* at 5. The IJ ultimately denied Bonilla Padilla's bond redetermination because the IJ found Bonilla Padilla was a

> Danger to the community, [who has] two DUI convictions, in addition to a reckless driving charge, in the last 10 years and a third DUI arrest is pending. The court finds that Drunk Driving and/or driving under the influence of alcohol(DUI) is an extremely dangerous crime, which creates a risk to the lives and property of the residents and citizens of the USA. *See Begay v. United States*, 553 U.S. 137 (2008).

> Further, the court finds that he has repeatedly violated this country's criminal laws and is a danger to the community. *See Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006) (noting that an Immigration Judge may consider several factors, such as an alien's criminal record, extensiveness of criminal activity, and whether he or she is a danger to the community in bond proceedings).

IJ order, Pet'r's Ex. 2, ECF No. 6-2 at 2 (citations modified).

On May 15, 2026, the IJ issued a bond memorandum which explained that on April 22, 2026, the court granted Bonilla Padilla's request for release on bond and set bond in the amount of $15,000.00. Bond memo., Pet'r's Ex. 3, ECF No. 6-3. But the memorandum goes on to say that the IJ found that Bonilla Padilla "is a danger to the community as he has two prior DUI convictions in addition to a reckless driving offense, in the last 10 years and he was recently arrested for a possible third DUI offense." *Id.* at 4. The IJ further explained that it "observe[d] that [Bonilla Padilla] did not learn from his first conviction for DUI because he committed the same offense again and a third charge for DUI is now pending. Therefore, the Court gives greater

weight to [Bonilla Padilla's] criminal history than the other factors in assessing [Bonilla Padilla's] dangerousness to the community." *Id.* The IJ also stated that it has acknowledged "the equities cited by [Bonilla Padilla] in support of his plea for bond, which include his extensive family ties here in the United States." *Id.* at 5.

Bonilla Padilla reserved his right to appeal the bond denial and filed an appeal with the Board of Immigration Appeals (BIA) on April 28, 2026. ECF No. 6 at 5; ECF No. 8 at 3. The appeal remains pending. In the FAP, Bonilla Padilla asserts that the respondents violated his Fifth Amendment right to procedural due process because the respondents failed to provide a constitutionally adequate bond hearing.

**II.     Legal standard**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that their continued detention violates of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

**III.     Discussion**

**A.   Waiver of administrative exhaustion is warranted.**

The respondents argue that Bonilla Padilla has not exhausted his administrative remedies, so his petition should be denied. ECF No. 9 at 2. They contend that Bonilla Padilla is required to exhaust his administrative remedies before seeking relief in a writ of habeas corpus petition. *Id.* at 3. In opposition, Bonilla Padilla argues that exhaustion is a prudential doctrine and that dismissal of the petition is not required because exhaustion is excused. ECF No. 10.

Bonilla Padilla further argues that if he were required to await BIA review, it would prolong the very detention he challenges as unconstitutional and continued detention would cause irreparable harm. *Id.* at 2. He also argues that the BIA is not the proper forum to resolve his constitutional claim, and the *Puga* factors relied upon by that the respondents support that dismissal is unwarranted. *Id.* at 3 (referencing *Puga v. Chertoff*, 488 F.3d 812 (9th Cir. 2007).

I first address whether administrative exhaustion is excused. "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). Administrative exhaustion may be waived when "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these *Laing* factors applies." *Chavez v. Noem*, 801 F. Supp. 3d 1133, 1139 (S.D. Cal. 2025).

This circuit has held "that waiver was appropriate in the case of an alien who challenged the indefinite length of his detention pending removal rather than his removability." *Laing*, 370 F.3d at 1001; *see also Marquez v. INS*, 346 F.3d 892 (9th Cir. 2003); *Ali v. Ashcroft*, 346 F.3d 873 (9th Cir. 2003). Indeed, "the starting point of the analysis is the length of detention—both how long the petitioner has been detained and how long the detention is likely to last." *Gonzalez v. Bonnar*, 2019 U.S. Dist. LEXIS 12636, at *14 (N.D. Cal. Jan. 25, 2019) (collecting cases). Other courts have held that that "the potential for irreparable harm to Petitioner, in the form of continued unlawful denial of [bond] hearings for potentially four months or more," was so great that waiver of exhaustion requirement is appropriate. *See Villalta v. Sessions*, 2017 U.S. Dist. LEXIS 162981, at *9 (N.D. Cal. Oct. 2, 2017); *Cortez v. Sessions*, 2018 U.S. Dist. LEXIS 51007 (N.D. Cal. Mar. 27, 2018); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (finding irreparable harm in continued

4

detention of noncitizens who would likely be granted conditional release if afforded a bond hearing); *Lozano Rosales v. Simon*, 2026 U.S. Dist. LEXIS 50660, at *14 (E.D. Va. Mar. 11, 2026) (observing that the federal respondents had "not advanced any compelling argument for the proposition that [the petitioner] should be required to appeal to the BIA before seeking relief" in a habeas proceeding, and refusing to require the petitioner to "sit in an ICE detention facility for months on end while he awaits a BIA decision").

I find that Bonilla Padilla has met his burden showing waiver of administrative exhaustion is warranted here. There is no information as to when the BIA would render a decision on Bonilla Padilla's appeal; thus, he could be detained indefinitely. This is untenable. Accordingly, based on the information before the court, Bonilla Padilla's detention is neither brief nor anticipated to end in the near future, so waiver of administrative exhaustion is warranted.

**B. Bonilla Padilla's petition is denied.**

The respondents argue that 8 U.S.C. § 1226(e) places DHS' discretionary judgment on bond determinations beyond the court's review. ECF No. 9 at 10. In other words, the respondents argue that the IJ's determination is not reviewable by this court, and the court may only determine whether the process itself protects the petitioner's due process right, not whether the outcome of that process was correct. *Id.* at 11. In opposition, Bonilla Padilla argues that § 1226(e) does not bar review of his constitutional and legal claims because it does not insulate constitutionally defective bond procedures from habeas review. ECF No. 10 at 4. The petitioner asserts that he is asking this court to decide whether the process used to deprive him of liberty complied with due process. *Id.*

Indeed, federal courts lack jurisdiction to review discretionary bond determinations, but § 1226(e) does not preclude judicial review of constitutional claims or questions of law. *Martinez v. Clark*, 124 F.4th 775, 781–82 (9th Cir. 2024); *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) (explaining § 1226(e) does not strip a district court of its traditional habeas jurisdiction, bar

constitutional challenges, or preclude a district court from addressing a habeas petition challenging the statutory framework that permits the petitioner's detention without bail). The determination of whether a noncitizen is a danger to the community for immigration-detention purposes is reviewable under an abuse of standard, so courts cannot reweigh evidence but can only determine whether the IJ applied the correct legal standard. *Martinez*, 124 F.4th at 779, 785. This includes whether the IJ properly considered the detention factors set forth in *In Re Guerra*. *Id.*

Because the petitioner is arguing that his bond hearing did not comport with due process, I find that I have jurisdiction over the petition. Accordingly, I next turn to whether the petitioner's request for relief should be granted.

Bonilla Padilla argues that the IJ failed to apply the correct legal standard or meaningfully assess current dangerousness. ECF No. 6 at 7. Bonilla Padilla further argues that while criminal history may be relevant under *Guerra*, it is not a substitute for an individualized assessment of present dangerousness. *Id.* at 8. The petitioner argues that the IJ erred, and the IJ denied bond based primarily on the petitioner's prior DUI history and then-pending March 2026 DUI arrest. *Id.* at 9. However, the petitioner argues that the IJ's decision did not meaningfully assess whether the petitioner's criminal history, viewed in light of the full record, established a current danger that could be mitigated by conditions of release. *Id.*

Bonilla Padilla also argues that the procedural defects were compounded by the circumstances of the hearing—that is, that Bonilla Padilla was unrepresented and proceeded in Spanish. *Id.* at 10.[2] Further, he argues that the written bond memorandum does not identify the standard of proof applied to the dangerousness determination, does not state who bore that burden, and does not explain what showing was required to deny release. *Id.*

---

[2] It is unclear from the petitioner's argument whether he is asserting that his bond hearing did not comport with due process because there was no Spanish translation provided, or if there was some other language barrier, so I do not address this argument. Further, the petitioner also fails to cite case law supporting his argument that a bond hearing fails to comport with due process if the petitioner is unrepresented. So I decline to reach a decision on the merits as to this argument.

6

In opposition, the respondents argue that the IJ applied the correct standard pursuant to § 236(a) of the INA. ECF No. 9 at 7. The respondents' position is that the correct standard to apply during a custody redetermination hearing is that an "alien . . . must establish to the satisfaction of the [IJ] and the Board that he is not a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Id.* at 7 (citation modified). The respondents further argue that the petitioner is attempting to reverse the burden on the government which is not supported by statute nor case law. *Id.* at 9.

In reply, Bonilla Padilla asserts that due process does not permit continued civil detention based on a bond hearing where the government is not required to justify detention under a constitutionally adequate standard and the IJ does not meaningfully explain the basis for detention. ECF No. 10 at 5.

In assessing a noncitizen's request to be released on bond, the IJ is obligated to consider the factors outlined by the BIA in *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). That case sets out the nine factors to be considered in assessing an individual's request for release on bond:

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitled the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*In re Guerra*, 24 I. & N. Dec. at 40. The Ninth Circuit has recognized one of the "most pertinent" factors at custody redeterminations is an "alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." *Singh*, 638 F.3d at 1206. Although a person's "criminal record is surely relevant to a bond assessment, *Guerra* contemplates that criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness." *Id.*

7

Further, the burden is on the government to prove whether or not the noncitizen is a flight risk or will be a danger to the community. *See Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 951 (9th Cir. 2008) (a noncitizen is "entitled to release on bond unless the government establishes that he is a flight risk or will be a danger to the community"); *Singh*, 638 F.3d at 1203 (explaining that "the substantial liberty interest at stake" warranted placing the burden on the government to "prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond"), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018).

This case presents a close call. First, the IJ's order and the IJ's memorandum provide conflicting rulings. *See* ECF Nos. 6-2, 6-3. The order states that Bonilla Padilla's request for bond redetermination was denied. ECF No. 6-2 at 2. However, the IJ's bond memorandum explains that it granted Bonilla Padilla's request for release on bond and set the bond in the amount of $15,000.00 on April 22, 2026. ECF No. 6-3 at 2. Second, while the IJ's bond memorandum explains that it considered Bonilla Padilla's arguments concerning "his extensive family ties here in the United States" and that it "considered all evidence in the record of proceedings," it remains unclear whether the IJ applied the proper standard—that is, whether the IJ placed the burden on the government to show that continued detention is warranted because Bonilla Padilla is a danger to the community and a flight risk. However, Bonilla Padilla does not cite case law which stands for the proposition that an IJ must **identify** the standard of proof applied to the dangerousness determination and who bore that burden.

While the order and memorandum give conflicting rulings, I find that the bond memorandum explains the IJ's ruling, and therein the immigration court explains that it considered all evidence in its record, including dangerousness and flight risk. Even if the IJ did not explicitly identify the standard of proof, a review of the IJ's memorandum indicates that the IJ evaluated all of the *In re Guerra* factors and placed the burden on the government in reaching its

determination to deny bond. Accordingly, I find that Bonilla Padilla's April 22, 2026 bond hearing satisfies constitutional muster and decline to grant the requested relief at this time.

**IV.     Conclusion**

IT IS HEREBY ORDERED that Bonilla Padilla's first amended petition for writ of habeas corpus [ECF No. 6] is DENIED.

IT IS FURTHER ORDERED that the respondents' motion to dismiss [ECF No. 9] is DENIED.

The Clerk of Court is kindly instructed to close this case.

Dated: July 6, 2026

_____
Cristina D. Silva
United States District Judge

9